Fuentes v Parkchester S. Condominium, Inc.
2026 NY Slip Op 03920
June 23, 2026
Appellate Division, First Department
Friedman, J.
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Odalys Fuentes, Plaintiff-Respondent,
v
The Parkchester South Condominium, Inc. et al., Defendants, Leroy Pharmacy, Defendant-Appellant.

Supreme Court, Appellate Division, First Judicial Department
Decided and Entered: June 23, 2026
Index No. 31356/18|Appeal No. 5501|Case No. 2025-03544|
Troy K. Webber
David Friedman Manuel Mendez Martin Shulman Shlomo S. Hagler

Gallo Vitucci Klar LLP, New York (Sara R. David of counsel), for appellant.
Constantinidis & Associates, P.C., Bellmore (Steven T. Lane of counsel), for respondent.

Defendant Leroy Pharmacy appeals from an order of Supreme Court, Bronx County (Alison Y. Tuitt, J.), entered May 23, 2024, which, to the extent appealed from, denied this defendant's motion for summary judgment dismissing the complaint as against it.

Friedman, J.
[*1]
On this appeal, we must decide whether, in an action to recover for personal injuries allegedly caused by a crack in a sidewalk, a commercial tenant that has established that it had neither statutory nor contractual responsibility for the sidewalk (as its landlord agreed) can be denied summary judgment dismissing it from the case simply because a photograph shows that one end of the crack touched the edge of the commercial tenant's cellar door. To be clear, no expert evidence has been presented to draw a causal connection between the cellar door and the crack, nor has evidence been presented that the commercial tenant made any "special use" (see Kaufman v Silver, 90 NY2d 204, 207 [1997]) of the portion of the sidewalk where the injuries were incurred. Nonetheless, on this record, the dissent would deny the commercial tenant summary judgment on the ground that the tenant could not affirmatively prove a negative proposition — namely, that none of its activities was a cause of the sidewalk defect on which plaintiff tripped five years before the summary judgment motion was made. We disagree with this approach.
In our view, as more fully described below, in this context, the commercial tenant — which moved for summary judgment after the close of discovery — carried its burden of establishing its prima facie entitlement to judgment by showing that it had no legal or contractual duty to keep the sidewalk in good repair. It then became plaintiff's burden to come forward with evidence tending to show that some affirmative act of the commercial tenant at least contributed to the causation of the crack in the sidewalk. Plaintiff failed to come forward with any such evidence, instead relying on speculation about the crack's causation based solely on the crack's proximity to the commercial tenant's cellar door, as shown in a photograph. Nor did plaintiff come forward with any evidence showing that the commercial tenant made any special use of the portion of the sidewalk on which she was injured.FN1 We hold that this was not sufficient to raise a triable issue of fact. Accordingly, we reverse the order appealed from and grant the commercial tenant summary judgment dismissing the complaint as against it.
[*2]
Plaintiff sues for injuries she allegedly incurred when she tripped and fell on a crack in the sidewalk along Metropolitan Avenue in the Bronx. The sidewalk at the place of the incident is abutted by 1488 Metropolitan Avenue, premises occupied by a commercial tenant, defendant Leroy Pharmacy (Pharmacy), and owned by defendant Parkchester South Condominium, Inc. It is undisputed that the Administrative Code of the City of New York § 7-210 assigns responsibility for maintenance of the sidewalk to Parkchester, the owner of the abutting premises, not to Pharmacy, the tenant; as Supreme Court stated in the decision under review, "only Parkchester owed a duty to [p]laintiff pursuant to the Administrative Code." It is also undisputed that, as noted by Supreme Court, Pharmacy's lease "does not impose an obligation on [Pharmacy] to maintain the sidewalk."FN2 Further, as Supreme Court observed, the deposition testimony of Parkchester's property manager, Cesar Corea, "establishes that Parkchester was the only entity responsible for repairing any alleged defects in the sidewalk."
Notwithstanding its recognition, as described above, that Pharmacy had no duty — whether under the Administrative Code, common law, or its lease — to maintain the sidewalk, Supreme Court denied Pharmacy's motion for summary judgment dismissing the complaint as against it. It was Supreme Court's view that Pharmacy "failed to carry its initial burden [as movant], as it presented no evidence affirmatively demonstrating that it did not cause or create the sidewalk condition that allegedly caused [p]laintiff's fall (see Harvey v Henry 85 LLC, 176 AD3d 443 [1st Dept 2019]) or put the sidewalk to a special use for its own benefit." This was error. Pharmacy's moving papers established that, as a commercial tenant — unlike the defendant in Harvey, which was the owner of the adjoining premises (176 AD3d at 444) — it had no duty to maintain the adjacent sidewalk. Pharmacy having established that it had no duty to maintain the sidewalk in a safe condition, the burden shifted to plaintiff, as opponent of the motion, to come forward with evidence tending to show a possible causal connection between the sidewalk defect and some activity by Pharmacy on or affecting the sidewalk. Plaintiff — who, before Pharmacy moved for summary judgment, filed a note of issue representing that "there is no outstanding discovery in this matter and all discovery has been completed and this matter is now ready to place [sic] on the calendar" — failed to produce any such evidence in opposition to the motion. Accordingly, Pharmacy's motion for summary judgment should have been granted.
[*3]
In the absence of any evidence that Pharmacy bore any responsibility for the sidewalk defect, plaintiff opposed the summary judgment motion on the ground that Pharmacy had made a special use of the sidewalk. Specifically, plaintiff argued that the sidewalk-level cellar door to the basement of Pharmacy's leased premises, through which Pharmacy sometimes receives deliveries, constituted a special use of the sidewalk, giving rise to "a question of fact as to whether [Pharmacy] had an obligation as a result of its 'special use' of the vault door and surrounding sidewalk." Although Supreme Court did not specifically address this contention in its decision, our dissenting colleague finds it persuasive, taking the position that a triable issue as to a connection between the cellar door and the crack arises from photographs showing that the crack on which plaintiff tripped touches on the edges of the cellar door. The dissent, like plaintiff and Supreme Court, also maintains that Pharmacy failed to establish a prima facie case that it was entitled to judgment as a matter of law because it did not affirmatively prove that it did not cause the sidewalk crack, from which the conclusion is drawn that the summary judgment motion should have been denied regardless of the sufficiency of the opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Under the particular circumstances presented by this appeal, neither of these contentions has merit.
[*4]
We turn first to the contention that Pharmacy failed to demonstrate prima facie that it was entitled to summary judgment. While we agree that it is generally the burden of a defendant moving for summary judgment in a premises liability case to produce affirmative evidence that it did not create or have notice of the defect that caused the injury, the application of this principle assumes that the moving defendant had some control over, or duty of care with respect to, the premises at issue. However, where the defendant had no control over the premises, and no duty of care with respect to the premises, it is not realistic to expect the defendant to come forward with affirmative proof that it did not create the defect giving rise to the injury — in other words, to produce affirmative proof of a negative proposition. A defendant's motion papers establishing prima facie that it had no control over, or responsibility for, the premises in question suffices to shift the burden of production to the plaintiff.FN3 Indeed, in this case, it makes no sense to suggest that an obviously major landowner like Parkchester, bearing responsibility for the sidewalk by statute, would permit one of its commercial tenants to make any structural changes to the sidewalk. The dissent simply ignores the unfairness — and the deleterious effect on the cost of living and doing business in New York — of allowing plaintiffs in cases based on premises defects to drag into the litigation parties that had no responsibility for the property in question and then requiring such parties to affirmatively prove that they did not cause the defect as a precondition to releasing them from the case.FN4
[*5]
The dissent, as did Supreme Court, misapplies the general principle that it is the burden of the movant for summary judgment to establish an affirmative prima facie case for judgment in its favor. This is not a typical premises liability case, in which the defendant's duty, as owner or tenant in possession, to maintain the property in reasonably safe condition is not in question. Here, plaintiff was allegedly injured on a sidewalk for which Pharmacy, as previously noted, and as acknowledged by Parkchester, its landlord, had no maintenance responsibility, either by operation of law (Administrative Code § 7-210 being inapplicable to commercial tenants) or under its lease. Once Pharmacy established, in its moving papers, that neither the Administrative Code nor the lease imposed any obligation upon it with respect to the sidewalk abutting its premises, and denied (through the affidavit of Pushpa Desai, its store manager at the relevant location at the time) "mak[ing] any repairs to the sidewalk before [p]laintiff's accident on May 28, 2017," the burden shifted to plaintiff to come forward with affirmative evidence raising an issue as to whether Pharmacy made a special use of the sidewalk or otherwise caused the defect on which plaintiff tripped. Plaintiff came forward with no such evidence. Rather, she offered only speculation that the crack might have been caused by a delivery to the cellar door FN5 or, alternatively, by a hypothetical repair Pharmacy had voluntarily and gratuitously attempted to make to the sidewalk. Since Pharmacy had satisfied its prima facie burden by establishing that it had no legal or contractual obligation to maintain the sidewalk, plaintiff's speculative opposition did not suffice to defeat the summary judgment motion.FN6
As we stated in granting summary judgment to a commercial tenant (Starbucks) of another building owned by Parkchester:
"[The senior property manager's] testimony clearly establishes that Parkchester was the only entity responsible for repairing any alleged defects in the sidewalk. Only Parkchester owed a duty to plaintiff pursuant to the Administrative Code and under the lease. Plaintiff's arguments as to Starbucks's potential liability under the lease were speculative and fail to raise any issues of fact. Starbucks is entitled to summary judgment dismissing the complaint against it" (Chaudhry v Starbucks Corp., 213 AD3d 521, 523 [1st Dept 2023] [citation omitted]).FN7
[*6]
Also instructive here is our decision affirming the grant of summary judgment to a commercial tenant (Lululemon) in Keech v 30 E. 85th St. Co., LLC (154 AD3d 504 [1st Dept 2017]), another case in which the plaintiff tripped on a sidewalk defect. In addition to holding that Lululemon's receipt of deliveries over the sidewalk did not constitute a special use of the sidewalk (as previously noted), we held that "the motion court correctly concluded that Lululemon . . . had no obligation to maintain the sidewalk, even if its employees had cleared the sidewalk of snow and debris. Further there is no evidence that Lululemon created the alleged defect in the sidewalk" (id. at 505). In the present case, where there is no evidence that Pharmacy engaged in any sidewalk maintenance at all, Pharmacy is similarly entitled to summary judgment.FN8
Also unavailing is the dissent's argument that, because Pharmacy enjoys a special use of the cellar door, a triable issue exists as to whether there is a causal connection between the cellar door and the sidewalk crack on which plaintiff tripped.FN9 Initially, it must be borne in mind that, even if Pharmacy enjoyed a special use of the cellar door, that special use did not extend to the surrounding sidewalk on which plaintiff tripped. Assuming that Pharmacy did make a special use of the cellar door, it thereby assumed a responsibility to maintain only the cellar door itself in a reasonably safe condition (see Kellogg v All Sts. Hous. Dev. Fund Co., Inc., 146 AD3d 615, 617 [1st Dept 2017] [a tenant making special use of a sidewalk "assum(es) a responsibility to maintain the part used in reasonably safe condition"] [emphasis added]).FN10 We do not take issue with the dissent's argument that liability could be imposed on Pharmacy based on evidence that there was some causal connection between the cellar door and the crack. That point, however, avails plaintiff nothing, because, to reiterate, the record simply contains no evidence that the crack was causally "tied" (Prete v JJ Hoyt LLC, — AD3d —, 2026 NY Slip Op 00458, *1 [1st Dept 2026]) to the cellar door.
[*7]
Nor would the transit of deliveries to Pharmacy over the sidewalk to the cellar door constitute a special use of the sidewalk. While Ms. Desai, a Pharmacy's witness, acknowledged that Pharmacy received some deliveries through the cellar door, it is well established in the First Department that reception of deliveries that have merely traversed a sidewalk en route to the entrance of the destination does not constitute a special use of the sidewalk by the recipient of the deliveries (see Keech, 154 AD3d at 505 [a commercial tenant's "receipt of deliveries on trolleys transported over the sidewalk to its store did not constitute a special use of the sidewalk"]; Rodriguez v City of New York, 48 AD3d 298, 298 [1st Dept 2008] ["The mere ownership of the abutting property . . . does not raise an issue of fact as to whether a special use of the sidewalk was being made. The occasional use of the side of the store for deliveries does not constitute a special use"]; Tyree v Seneca Ctr.-Home Attendant Program, 260 AD2d 297, 297-298 [1st Dept 1999] ["The occasional use of the sidewalk for deliveries does not constitute a special use . . . Defendant's mere receipt of ordinary deliveries of office supplies does not suffice to show special use of the sidewalk by the appellant tenants sufficient to withstand the summary judgment motions"]; Kaminer v Dan's Supreme Supermarket/Key Food, 253 AD2d 657, 657 [1st Dept 1998] [same]).
The Second Department has reached similar conclusions (see Jordan v City of New York, 23 AD3d 436, 437 [2d Dept 2005] ["the mere fact that (the) commercial tenant used the sidewalk to gain access to a nearby basement door was insufficient to establish the existence of a special use"]; Ioffe v Hampshire House Apt. Corp., 21 AD3d 930, 931 [2d Dept 2005] ["the plaintiff's contention that (the abutting landowner's) conduct in putting trash by the curb for collection constituted a special use of the sidewalk is patently without merit"]; Yee v Chang Xin Food Mkt., 302 AD2d 518, 519 [2d Dept 2003] [the commercial tenant's "act of supplying its customers with shopping carts to transport their packages from its store along the sidewalk to the parking lot at the rear of the store does not constitute a special use of the property"]).
[*8]
What emerges from the foregoing case law is that the transport over the sidewalk of deliveries to Pharmacy's cellar door, however frequent, would not have constituted a special use of the sidewalk, unless, perhaps, the deliveries were transported over the sidewalk in trucks or automobiles (see Peretich v City of New York, 263 AD2d 410, 411 [1st Dept 1999]; Infante v City of New York, 258 AD2d 333, 334 [1st Dept 1999]; Mincey v Mensch, 253 AD2d 656, 656 [1st Dept 1998]). However, the record contains not a shred of evidence that any motor vehicle was ever driven onto the sidewalk in connection with Pharmacy's business, nor has plaintiff made any suggestion to that effect; indeed, at the deposition of Pharmacy's witness (Ms. Desai), plaintiff's counsel did not ask her a single question about whether deliveries to Pharmacy were received through the cellar door or about the frequency or manner of such deliveries.FN11
It appears to be the dissent's position that, to establish prima facie its entitlement to judgment as a matter of law, Pharmacy was required to come forward with affirmative proof that the manner or frequency of deliveries over the sidewalk to the cellar door leading to Pharmacy's basement was not sufficient to constitute a special use of the sidewalk. Initially, as discussed above, our case law establishes that the mere receipt of manual deliveries over a sidewalk, however frequent, does not constitute special use of the sidewalk. But even if the law were otherwise, plaintiff failed to avail herself of the opportunity to explore the frequency and manner of deliveries through the cellar door during discovery — and, in particular, at the deposition of Pharmacy's witness — and therefore has failed, arguably, to preserve any such factual issue as a ground for denying Pharmacy summary judgment to which it is otherwise entitled.
[*9]
Ultimately, the position of plaintiff and the dissent rests on the photographs in the record showing that the crack on which plaintiff tripped touches one of the edges of the cellar door. Based on this bare visual datum, plaintiff and the dissent argue that a triable issue exists as to whether the cellar door somehow caused the crack. However, plaintiff submitted no expert evidence from which a factfinder could reach a nonspeculative conclusion that the cellar door was the cause of the crack; indeed, plaintiff did not even suggest a mechanism by which the cellar door could have caused the crack. The dissent characterizes the photographs as showing the crack "emanat[ing] from the edge of the cellar door to the place on the sidewalk where [plaintiff] allegedly fell." However, in the absence of any expert evidence to the contrary, the crack could just as accurately be described as emanating from the middle of the sidewalk to the edge of the cellar door. On this record, there is no basis other than speculation on which to conclude where the crack originated or what caused it. Under this Court's more recent jurisprudence, this does not suffice to create an issue of fact as to whether the special use of the cellar door was a cause of the crack on which plaintiff tripped (see Fatty v City of New York, 232 AD3d 415, 416 [1st Dept 2024] [affirming grant of summary judgment to the defendant where "the record contain(ed) no nonspeculative evidence showing that (the defendant's) alleged special use — namely, a curb cut to facilitate deliveries to its loading dock — caused or created the allegedly defective condition"]). Contrary to the dissent's attempt to distinguish Fatty, and as demonstrated by the language just quoted from that decision, the affirmance of summary judgment for the Fatty defendant was based on the lack of "nonspeculative evidence" of a causal connection between the special use and the defect, which is exactly the same basis for our grant of summary judgment to Pharmacy in this case.FN12
In opposing the summary judgment motion and on appeal, plaintiff has placed her principal reliance on Weiskopf v City of New York (5 AD3d 202 [1st Dept 2004]), in which we held that "the installation [into a sidewalk] of [a] subway entrance substructure constituted a special use by the [transit authority]" (id. at 203). Weiskopf is inapposite here, inasmuch as the Weiskopf plaintiff submitted expert evidence that the installation of the substructure had caused the defect on which the plaintiff had tripped (id. at 202). In our case, even assuming that the cellar door itself was a special use by Pharmacy of the sidewalk, plaintiff offers nothing but speculation that the cellar door, or Pharmacy's deliveries to the cellar door, played any role in causing the crack on which she tripped.
[*10]
Accordingly, the order of Supreme Court, Bronx County (Alison Y. Tuitt, J.), entered May 23, 2024, which, to the extent appealed from, denied defendant Leroy Pharmacy's motion for summary judgment dismissing the complaint as against it, should be reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.
All concur except Hagler J., who dissents in a seperate Opinion.
Hagler, J. (Dissenting)

The fundamental issue on this appeal is whether a defendant upon making a summary judgment motion shifts the burden of proof to a plaintiff merely by showing the absence of a statutory and contractual duty, and without presenting any proof whatsoever that defendant did not create a dangerous condition nor make special use of the area where an injury occurred. Significantly, the defendant here did not even attempt to meet its burden that it did not create the alleged dangerous condition.
The majority offers no support for its holding that defendant is relieved of its obligation to come forward with affirmative proof that it did not create the defect giving rise to the subject injury or make special use of the subject sidewalk simply by establishing that it had no legal or contractual obligation to maintain the sidewalk. Most significantly, in a recent decision of this Court, we reversed the Supreme Court and held that it "should not have granted defendant's motion for summary judgment because defendant failed to establish prima facie that the condition was not created or exacerbated by her special use of the sidewalk as a driveway" (Colon v City of New York, 247 AD3d 403, 403 [1st Dept 2026], citing Prete v JJ Hoyt LLC, — AD3d —, 2026 NY Slip Op 00458 [1st Dept 2026]).
This is not a difficult burden placed on defendant as the majority argues, but is a reasonable burden ensconced in our long and rich jurisprudence. Meeting this burden simply turns on defendant proffering a supporting affidavit or testimony from an individual with personal knowledge of the facts of the case. If defendant does proffer this requisite supporting proof the burden is satisfied (Fatty v City of New York, 232 AD3d 415, 416 [1st Dept 2024]); if it does not supply this proof, as here, the burden remains unsatisfied, and summary judgment must be denied (Colon, 247 AD3d at 403). As a result, I respectfully dissent.
Plaintiff Odalys Fuentes commenced this action against defendants Parkchester South Condominium, Inc., and the Board of Managers of the Parkchester South Condominium Inc. (together, Parkchester), the owner of the premises, and Leroy Pharmacy (Pharmacy), which leased commercial space from Parkchester, alleging that she suffered personal injuries. Specifically, plaintiff alleged that on May 28, 2017, she tripped and fell on a crack in the sidewalk in front of Pharmacy; according to plaintiff, the crack was approximately 2 ½ inches deep and originated from the cellar door of Pharmacy.
[*11]
Parkchester's property manager Cesar Corea testified that Parkchester maintained the area where plaintiff fell. Pharmacy store manager Pushpa Desai testified that there was a cellar door adjacent to its premises. Pharmacy used this door to receive deliveries to be stored in the basement, which is part of the demised premises. Desai testified that she did not know any details of these deliveries. Desai was "not sure" if she worked at Pharmacy, nor what the adjacent sidewalk looked like in May 2017, nor did she know whether there was any construction work, renovation, maintenance or repairs done to the area surrounding Pharmacy in or before May 2017.
Pharmacy moved for summary judgment dismissing the complaint and any cross-claims, arguing that Pharmacy was not liable to plaintiff as it had no statutory or contractual duty to maintain the sidewalk. More importantly, Pharmacy also argued that there was no evidence to suggest that it caused the condition to occur through any special use of the sidewalk. In support of its motion, Pharmacy relied upon Corea and Desai's deposition testimony, lease documents, and photographs of the sidewalk showing the crack. It also attached Desai's affidavit, which provided that Pharmacy was a commercial tenant in the building and did not make any repairs to the sidewalk before plaintiff's accident. Plaintiff opposed the motion, arguing that Pharmacy had not sustained its burden of proof and the photographs, at the very least, raised triable issues of fact that Pharmacy had caused the dangerous condition or made special use of the sidewalk.
While Parkchester may have a statutory duty by operation of law (Administrative Code of City of NY § 7-210), it is conceded that Pharmacy as a commercial tenant would not owe such a duty to plaintiff.
Plaintiff argued in opposition to the summary judgment motion that Pharmacy owed a contractual duty to Parkchester under the governing lease documents. In paragraph 4 of the original lease dated March 9, 1995, Pharmacy was responsible to maintain and make any non-structural repairs to the sidewalks adjacent to the premises. Later, in paragraph 8 of a second amendment to lease dated April 27, 2017, paragraph 4 of the lease was deleted, with no specific reference to allocation of responsibility for repair of the sidewalks. However, paragraph 8(C) of the second amendment seemingly restored Pharmacy's obligation to maintain/repair the adjacent sidewalks: "Except for those obligations of [Parkchester] specifically set forth above, [Pharmacy] shall maintain the entire Premises . . . whether such systems or equipment are located in the Premises or elsewhere . . ." Parkchester never opposed Pharmacy's summary judgment motion to dismiss its cross-claims, and the motion court dismissed Parkchester's cross-claims as deemed abandoned.
[*12]
A third party can be held liable in tort where it affirmatively caused or created a dangerous condition that resulted in injury (Kellogg v All Sts. Hous. Dev. Fund Co., Inc., 146 AD3d 615, 617 [1st Dept 2017]). There is nothing in this scant record to reflect that Pharmacy even attempted to demonstrate that it did not cause or create the alleged dangerous condition. The majority acknowledges this glaring omission, but provides little or no support to cure this insurmountable failure of proof on the part of Pharmacy.
The special use doctrine imposes a duty upon an owner and occupying tenant with respect to an object installed in a public sidewalk that is otherwise unrelated to public usage of the sidewalk and that causes injury. In other words, since the owner and/or occupying tenant obtain a private benefit by virtue of the installation of the object, a corresponding duty is imposed to repair and maintain the same.
In the 19th century, the Court of Appeals recognized this doctrine, calling it a "general rule," and imposing liability upon a defendant where "permission is given, by a municipal authority, to interfere with a street solely for private use and convenience in no way connected with the public use" (Clifford v Dam, 81 NY 52, 56-57 [1880]). More recently, the Court of Appeals reiterated that the special use doctrine applies where a property owner "derives a special benefit from that property unrelated to the public use, and is therefore required to maintain a portion of that property" (Poirier v City of Schenectady, 85 NY2d 310, 315 [1995]). This doctrine is not limited to abutting owners, but also to occupying tenants that derive some benefit, have access to, or control the special use of the public sidewalk: "Inherent in the doctrine of special use is the principle that the duty to repair and maintain the special structure or instrumentality is imposed upon the adjoining landowner or occupier because the appurtenance was installed at their behest or for their benefit" (Kaufman v Silver, 90 NY2d 204, 207 [1997] [emphasis added]). Essentially, both the adjoining landowner and the occupying tenant may be held liable as joint-tortfeasors for special use of a public sidewalk (see id. at 208).
[*13]
This centuries-old doctrine is not derived from and dependent upon subsequent statutorily enacted duties nor contractual duties imposed by others. To be clear, the special use doctrine stands firmly established as a separate duty independent of other duties and responsibilities. More recently, we recognized the independence of the special use doctrine (Kellogg, 146 AD3d at 617 [a third party cannot be held liable "in tort absent a showing that (a) it affirmatively caused or created the defect that caused plaintiff to trip, or (b) put the subject sidewalk to a 'special use' for its own benefit, thus assuming a responsibility to maintain the part used in reasonably safe condition"] [emphasis added]; Collado v Cruz, 81 AD3d 542, 542 [1st Dept 2011] ["Administrative Code of the City of New York § 7-210 imposes a nondelegable duty on the owner of the abutting premises to maintain and repair the sidewalk, and it was undisputed that the tenant did not create the condition or make special use of the sidewalk"] [emphasis added]). A cellar door may constitute a special use of the sidewalk where it was installed FN13 at the behest of one of the defendants or benefits defendants. Thus, both Parkchester and Pharmacy may be held liable as joint tortfeasors (see LaRosa v Corner Locations, II, L.P., 169 AD3d 512, 513 [1st Dept 2019] [issue of fact whether cellar door constituted a special use of the sidewalk for which both owner and occupying tenant may be held liable as joint tortfeasors]).
I disagree with the majority's argument that even assuming Pharmacy made a special use of the cellar door, it assumed responsibility to maintain only the cellar door itself in a reasonably safe condition. The majority's reliance on language in Kellogg (146 AD3d at 617) that a tenant making a special use assumes "responsibility to maintain the part used in a reasonably safe condition" to mean that special use of a cellar door would not extend to the surrounding sidewalk, is misplaced. In fact, liability will be imposed if a defect on an abutting sidewalk is "tied to" a defendant's special use of the property (Prete v JJ Hoyt LLC, — AD3d—, 2026 NY Slip Op 00458, *1 [1st Dept 2026]). A defendant will not be liable for a defect only if it is "unrelated to its special use"(id.). Stated another way, the special use must cause or give rise to the defect.
[*14]
Here, Pharmacy failed to meet its prima facie burden that its special use of the cellar door did not cause the alleged defect in the abutting sidewalk. At the very least plaintiff raised an issue of fact. Contrary to the majority's contention, Fatty v City of New York, 232 AD3d 415, 416 [1st Dept 2024] reinforces the long-held precedent that a defendant moving for summary judgment must make a prima facie showing that a special use did not cause or create the alleged defect. In Fatty, unlike here, "the record contained no nonspeculative evidence showing that [the defendant's] special use — namely, a curb cut to facilitate deliveries to its loading dock — caused or created the allegedly defective condition" (232 AD3d at 416).FN14
Photographic evidence supports plaintiff's testimony that a large crack emanated from the edge of the cellar door to the place on the sidewalk where she allegedly fell, causing her injuries. The majority discounts plaintiff's testimony and photographic evidence as "speculation." Under these circumstances, this type of evidence has been found sufficient to create a triable issue of fact precluding summary judgment (Granville v City of New York, 211 AD2d 195, 197-198 [1st Dept 1995] ["The photographic evidence further shows two cracks on the pavement extending from under and along the edge of the concrete step and leading directly to the defective area of the sidewalk where plaintiff allegedly tripped and fell. The defective condition of the sidewalk being contiguous to the cement step raises a factual issue as to whether such condition was caused by the owner's improper construction and/or maintenance of the step or landing. The issue concerning the causal connection between the owner's special use of a portion of the public walkway and the defective condition which caused the injury is an issue for the trier of the facts and precludes the granting of summary relief"]; Feldman v Kings Hero Rest., 270 AD2d 1, 1 [1st Dept 2000] ["Plaintiff's testimony that he tripped and fell on cracks in the sidewalk emanating from the metal plate sealing the elevator vault was sufficient to raise a triable issue as to whether the hotel's negligence in maintaining the surrounding area caused plaintiff's harm"]).
[*15]
The majority argues that Pharmacy has met its initial burden of proof merely by showing that there is no statutory and contractual duty, without proof that it did not create the dangerous condition or make special use of the sidewalk, shifting the burden to plaintiff. This ruling in not in conformity with legal precedent that a defendant bears the initial burden on its summary judgment motion to establish a prima facie case that it did not make special use of the sidewalk (Colonna v Allen, 35 AD3d 517, 518 [2d Dept 2006] ["On his motion for summary judgment, the defendant bore the initial burden of establishing, prima facie, that he did not make special use of the sidewalk in the area where the plaintiff fell" and the many cases cited therein for the same proposition]).FN15
Alternatively, the majority argues that Pharmacy met its initial burden "that neither the Administrative Code nor the lease imposed any obligation upon it with respect to the sidewalk abutting its premises, and denied (through [Desai's affidavit]) 'mak[ing] any repairs to the sidewalk before Plaintiff's accident on May 28, 2017.' "
The mere fact that Pharmacy does not have a statutory or contractual duty does not necessarily equate to meeting its prima facie case on the independent grounds of liability for special use of the sidewalk or that it had not created the dangerous condition. Logically, even if Pharmacy did not have a contractual duty to repair the sidewalk, it does not rule out that Pharmacy had created the dangerous condition.
To distill this further, the majority is left only with the Desai affidavit to make out Pharmacy's burden despite that the Desai affidavit lacked any probative value because she did not possess personal knowledge of the material facts of this case. Significantly, nowhere in the Desai affidavit (or in her deposition testimony) does she aver that Pharmacy had not created the dangerous condition or that it had not made special use of the sidewalk. In particular, Desai at her deposition answered twice, "I don't know" to a question concerning whether she was "aware of any construction work or any renovation to the exterior of the building that were done on or before 2017"; and whether she was "aware of any maintenance or repairs done to the [side]walk in the area surrounding Leroy Pharmacy on or before May of 2017." Desai further answered, "I'm not sure" to whether she "was working there [in the Pharmacy] in May of 2017" and whether she knew from photographs presented what the sidewalk "looked like back in May of 2017."
[*16]
However, in Desai's subsequent affidavit sworn to on December 20, 2022, she averred that no repairs were performed, without stating the source of this knowledge (see Danis v John C. Food Corp., 179 AD3d 606, 606 [1st Dept 2020] [a subsequent affidavit cannot be used to cure defects in deposition testimony]). Given that Pharmacy proffered Desai as its sole witness and that she lacked personal knowledge, Pharmacy failed to carry its prima facie burden, and the burden never shifted to plaintiff. The majority cites no authority for the proposition that merely because Pharmacy had no legal or contractual obligation to maintain the sidewalk, the burden suddenly shifted to plaintiff to come forward with proof that Pharmacy voluntarily made repairs that might have caused the crack on which plaintiff tripped.
It was Pharmacy's burden to proffer an expert affidavit, which it failed to do, opining that the cellar door was not causally related to the crack in the sidewalk. The majority posits that absence any expert evidence to the contrary, the crack could have emanated from the sidewalk itself to the cellar door, not the other way around. The majority again conflates the burden of proof. The majority maintains that plaintiff "submitted no expert evidence from which a factfinder could reach a nonspeculative conclusion that the cellar door was the cause of the crack." On a motion for summary judgment, however, it is the movant defendant's burden to come forward with affirmative proof, such as an expert affidavit, to establish that the cellar door did not cause the sidewalk crack depicted in the photograph.
The majority cites to Chaudhry v Starbucks Corp. (213 AD3d 521 [1st Dept 2023]), which granted summary judgment to a commercial tenant because only the property owner owed a duty under both the Administrative Code and the subject lease. That case is distinguishable as it involved an allegedly defective sidewalk and did not implicate any special use of the subject property. The majority's reliance on Keech v 30 E. 85th St. Co., LLC (154 AD3d 504 [1st Dept 2017]), alleging a trip and fall on a sidewalk, is likewise inapposite. There, the court found there was no evidence that defendant tenant created the alleged defect in the sidewalk. Here, however, defendant failed to adduce any admissible evidence to satisfy its prima facie burden on summary judgment.
[*17]
The cases that the majority relies upon all stand for the proposition that the occasional use of the sidewalk does not constitute special use (Keech v 30 E. 85th St. Co., LLC, 154 AD3d 504 [1st Dept 2017]; Rodriguez v City of New York, 48 AD3d 298 [1st Dept 2008]; Tyree v Seneca Ctr.-Home Attendant Program, 260 AD2d 297 [1st Dept 1999]; Kaminer v Dan's Supreme Supermarket/Key Food, 253 AD2d 657 [1st Dept 1998]; Jordan v City of New York, 23 AD3d 436 [2d Dept 2005]; Ioffe v Hampshire House Apt. Corp., 21 AD3d 930 [2d Dept 2005]; Yee v Chang Xin Food Mkt., 302 AD2d 518 [2d Dept 2003]). The distinguishing factor is that mere deliveries on the sidewalk alone do not give rise to liability unless there is a causal connection between the special use and the injury. Here, plaintiff alleges, and as can be seen from the photographs, that a large crack emanated from the edge of the cellar door to the place on the sidewalk where she allegedly fell causing her injuries. Pharmacy failed to meet its initial burden that it did not create the dangerous condition or that it did not make special use of the sidewalk.
For the foregoing reasons, I would affirm and deny Pharmacy's motion for summary judgment. Accordingly, I respectfully dissent.
Order, Supreme Court, Bronx County (Alison Y. Tuitt, J.), entered May 23, 2024, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.
Opinion by Friedman, J. All concur except Hagler J. who dissents in an Opinion.
Webber, J.P, Friedman, Mendez, Shulman, Hagler, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 23, 2026

Footnotes

Footnote 1
The dissent, in its focus on the red herring of special use, appears to conflate the sidewalk-level cellar door (which arguably was subject to special use by the commercial tenant) with the sidewalk itself. It was the sidewalk, not the cellar door, that was the location of plaintiff's injury. As more fully discussed hereinafter, there is not a shred of evidence in the record that the commercial tenant made any special use of the sidewalk, as the concept of "special use" has been developed in our case law. Further, the summary judgment motion was not made until after discovery had been closed by plaintiff's filing of a note of issue representing to the court that no discovery remained to be conducted.

Footnote 2
Indeed, Parkchester, which had interposed cross-claims for indemnification and contribution against Pharmacy, did not oppose the branch of Pharmacy's motion seeking dismissal of those cross-claims, thereby implicitly acknowledging that Pharmacy bore no responsibility for causing, preventing or repairing the sidewalk defect at issue.

Footnote 3
The only decision cited by the dissent on this point is not to the contrary. In Colonna v Allen (35 AD3d 517 [2d Dept 2006]), the record established that the portion of the sidewalk on which the plaintiff was injured was subject to special use by the defendant because it "was part of an active driveway used for [the defendant's] residence," and the defendant failed "to make a prima facie showing that his special use of the sidewalk as a driveway did not cause or contribute to the defective condition on which plaintiff allegedly tripped" (id. at 518). As discussed more fully below, in this case, the area of the sidewalk where plaintiff was injured was not subject to any special use by Pharmacy, even if the cellar door itself was, and there is no evidence in the record that the cellar door somehow caused the crack on which plaintiff tripped.

Footnote 4
Indeed, even in a case where the defendant actually had built the sidewalk on which the plaintiff was injured, it was held that the plaintiff could not create an issue of fact as to that defendant's liability by "speculat[ing] that the [defendant] created the dangerous condition when it constructed the sidewalk" (Schaal v City of Utica, 6 AD3d 1070, 1070 [4th Dept 2004], affd 3 NY3d 727, 728 [2004]).

Footnote 5
As more fully discussed later in this writing, merely transporting items over the sidewalk for delivery to Pharmacy would not constitute a special use of the sidewalk.

Footnote 6
The dissent finds Ms. Desai's affidavit denying that Pharmacy made any repairs to the sidewalk to "lack any probative value" because she had denied such knowledge during her deposition. However, as previously discussed, this is a case in which the commercial tenant had no maintenance obligation at all, legal or contractual, with regard to the sidewalk. In this circumstance, it should be plaintiff's burden, once discovery has concluded, to come forward with affirmative evidence that Pharmacy, in spite of its lack of obligation, voluntarily made repairs that might have caused the crack on which she tripped.

Footnote 7
Notably, we reached this conclusion in Chaudhry even though Starbucks's lease (unlike Pharmacy's lease in this case) obligated the commercial tenant to "keep any sidewalk . . . immediately contiguous to the Leased Premises free of snow, ice, debris, garbage, pests and vermin" (213 AD3d at 522 [internal quotation marks omitted]). Although the record of the case reveals that Starbucks performed sweeping and snow removal on the sidewalk pursuant to its duty under the lease, in reversing and granting Starbucks summary judgment, we implicitly held that Starbucks's admission that it conducted such activities, by itself, did not raise an issue as to whether Starbucks caused the defect in the sidewalk on which the plaintiff tripped. The dissent unsuccessfully attempts to distinguish Chaudhry on the ground that it "did not implicate any special use of the subject property." Neither does the case before us implicate any special use by Pharmacy of the sidewalk on which plaintiff was injured.

Footnote 8
The dissent cannot plausibly distinguish Keech on the ground that (in the dissent's words) "the [Keech] court found there was no evidence that defendant tenant created the alleged defect in the sidewalk." In the present case, too, there is "no evidence that [Pharmacy] created the alleged defect in the sidewalk."

Footnote 9
It is not clear whether the dissent is arguing that Pharmacy failed to make out a prima facie case in view of the special use of the cellar door or that plaintiff raised a triable issue in opposition by pointing to the special use of the cellar door. Either way, the argument fails.

Footnote 10
LaRosa v Corner Locations, II, L.P. (169 AD3d 512 [1st Dept 2019]), cited by the dissent in this connection, does not stand for the proposition that a commercial tenant's special use of a cellar door extends to the surrounding sidewalk. The LaRosa plaintiff tripped on the cellar door itself (id. at 513), not on a crack in the surrounding sidewalk, as allegedly occurred here.

Footnote 11
Ms. Desai acknowledged that Pharmacy received some deliveries through the cellar door in response to questions by Parkchester's counsel.

Footnote 12
Notably, we affirmed summary judgment for the defendant in Fatty even though the relevant defect was located on a portion of the sidewalk that we found to be subject to a special use by the defendant, unlike this case, where there is no evidence that the sidewalk on which plaintiff tripped was subject to any special use by Pharmacy. The older cases relied on by the dissent, if they were not in any event superseded by Fatty, are distinguishable in that in each case, the plaintiff was alleging that a structure constituting a special use had been built, installed or maintained so carelessly as to create the defect (see Feldman v Kings Hero Rest., 270 AD2d 1, 1 [1st Dept 2000]; Granville v City of New York, 211 AD2d 195, 197-198 [1st Dept 1995]). No such allegation is made here concerning the cellar door. In the recently decided case of Prete (— AD3d — 2026 NY Slip Op 00458), this Court, in holding that the defendant failed to establish that its special use of a sidewalk as a driveway did not cause the defect on which the plaintiff tripped, was applying the rule that, "[w]here the defect occurs in a part of the sidewalk which is used as a driveway, the abutting landowner, on a motion for summary judgment, bears the burden of establishing that he or she did nothing to either create the defect or cause it through the special use of the sidewalk as a driveway" (Marino v Parish of Trinity Church, 67 AD3d 500, 501 [1st Dept 2009] [internal quotation marks omitted], citing Torres v City of New York, 32 AD3d 347, 349 [1st Dept 2006]). The recent case of Colon v City of New York (247 AD3d 403 [1st Dept 2026]), upon which the dissent places disproportionate emphasis, is similarly distinguishable, because the reversal of summary judgment for the defendant in that case was based on a record that established the defendant's "special use of the sidewalk [on which the plaintiff was injured] as a driveway" (citing Prete, — AD3d —, 2026 NY Slip Op 00458). Obviously, a rule concerning sidewalks used as driveways is not applicable in this case.

Footnote 13
Pharmacy failed to allege the origin of the installation of the cellar door.

Footnote 14
The cases which the majority characterizes as "older cases relied on by the dissent" (Feldman v Kings Hero Rest., 270 AD2d 1 [1st Dept 2000]) and (Granville v City of New York, 211 AD2d 195 [1st Dept 1995]) are not inconsistent with Fatty.

Footnote 15
This position of the majority is even contrary to Pharmacy's own briefs filed herein and later acknowledged in questioning upon oral argument.